**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
1303 East Grand Avenue, Suite 101
Arroyo Grande, CA 93420
Telephone: (805) 994-0177
Facsimile: (805) 994-0197

**SWIGART LAW GROUP, APC**
Joshua B. Swigart, Esq. (225557)
josh@swigartlawgroup.com
2221 Camino Del Rio South, Suite 308
San Diego, CA 92108
Telephone: (866) 219-3343
Facsimile: (866) 219-8344

*Attorneys for Plaintiff*,
Rachel Horton

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RACHEL HORTON,<br><br>  Plaintiff,<br><br>       v.<br><br>CAINE & WEINER COMPANY, INC.; AND, EQUIFAX INFORMATION SERVICES LLC,<br><br>  Defendants. | Case No.: '21CV1160 WQHLL<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>(1) **FAIR CREDIT REPORTING ACT;**<br><br>(2) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT; AND,**<br><br>(3) **CALIFORNIA IDENTITY THEFT ACT**<br><br>**JURY TRIAL DEMANDED** |

| CASE NO.: | *Horton v. Caine & Weiner Company, Inc., et al.* |
|---|---|
| **COMPLAINT** | |

# INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq, to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. In addition, the United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

///
///
///
///

3. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices. *See* Cal. Civ. Code §§ 1788.1 (a)-(b).

4. RACHEL HORTON ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the conduct of Defendants CAINE & WEINER COMPANY, INC. ("C&W"); and, EQUIFAX INFORMATION SERVICES LLC ("Equifax") with regard to Defendants' continued misrepresentations of Plaintiff's personal liability for a fraudulent debt and this conduct caused Plaintiff damages.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Any violations by each Defendant were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; 15 U.S.C. § 1692, et seq.; and, 28 U.S.C. § 1367 for supplemental state claims.

10. This action arises out of Defendants' violations of (i) Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"); (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, et seq. ("CCCRAA"); (iii) California's Identity Theft Act, Cal. Civ. Code § 1798.92, et seq. ("CITA").

11. Because Defendants conduct business within the State of California, personal jurisdiction is established.

12. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person who resides in San Diego County from whom various debt collectors sought to collect various consumer debts which were due and owing or alleged to be due and owing from Plaintiff.

14. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c).

15. Plaintiff is a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.82(d).

16. C&W is a corporation located in the County of Los Angeles.

17. C&W is a furnisher of information as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

18. C&W is a "claimant" as that term is defined by California Civil Code § 1798.92(a).
19. Equifax is a corporation based in the State of Georgia.
20. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).
21. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).
22. Defendants are also each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).
23. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

24. At all times relevant, Plaintiff is an individual residing within the State of California.
25. On Valentine's Day of 2016, Plaintiff's vehicle was broken into while Plaintiff was exercising at LA Fitness in Oceanside, California.
26. The Fraudster then stole Plaintiff's purse which contained Plaintiff's wallet; driver's license; and, social security card.
27. Plaintiff filed a Police Report on February 15, 2016 with the Oceanside Police Department in an effort to protect herself from the turmoil that Plaintiff is now experiencing.

28. Said Police Report was assigned Case No.: 16002273.
29. Approximately six months later, Plaintiff began receiving written communications from various creditors, such as JCPenny and rental car companies, regarding accounts that were opened in Plaintiff's name in the State of Texas.
30. Plaintiff did not authorize any of these accounts being opened in her name; did not rent the vehicles in question; did not authorize any charges in connection with the accounts; and, did not obtain any benefits from these accounts.
31. Plaintiff later determined that the individual who utilized Plaintiff's information for these accounts was Austyn Halsema.
32. Unfortunately, Ms. Halsema stole each of the vehicles rented in Plaintiff's name without Plaintiff's knowledge or consent.
33. These thefts prompted a Sheriff in Texas to call Plaintiff and inform Plaintiff that a warrant had been issued for her arrest.
34. Following multiple communications with the Sheriff, Plaintiff was eventually absolved of these crimes in Texas since the Sheriff concluded that Plaintiff was the victim of identity theft.
35. Plaintiff was then informed by a San Diego County Prosecutor that Ms. Halsema was arrested while trying to obtain a hotel room in Plaintiff's name.
36. Halsema then served four years in prison for these crimes.
37. Plaintiff believed that Plaintiff would finally be able to move on with Plaintiff's life following this imprisonment and was able to resolve nearly all of the remaining fraudulent accounts.
38. However, multiple debts for vehicles rented through Fox Rent A Car ("Fox") have recently surfaced.
39. C&W, a collection law firm based in Woodland Hills, California, sought to collect a $2,083.64 debt from Plaintiff owed to Fox.

40. Plaintiff also learned that the C&W Debt was reported to Equifax; Experian; and, Trans Union as a major derogatory.
41. Plaintiff then disputed the inaccurate credit reporting of the C&W Debt via written communications sent to the Credit Bureaus pursuant to 15 U.S.C. § 1681i(a) in March 2020.
42. Plaintiff's dispute informed C&W and the credit bureaus that the C&W tradeline was inaccurate since Plaintiff was the victim of identity theft.
43. Upon information and belief, the Credit Bureaus timely notified C&W of Plaintiff's disputes and included the documents provided therewith.
44. C&W was required to conduct a reasonable reinvestigation into their credit reporting on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).
45. The Credit Bureaus also required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.
46. Plaintiff received later received notification that C&W and the Credit Bureaus received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.
47. Plaintiff was ecstatic to learn that Experian honored her dispute and removed the C&W tradeline from her credit report.
48. Unfortunately, Equifax; Trans Union; and, C&W verified their reporting in response to Plaintiff's March 2020 Dispute.
49. C&W also verified its inaccurate reporting on March 16, 2020 through its employee or agent, Michelle Oh.
50. Plaintiff submitted an additional dispute to the Credit Bureaus regarding the C&W Debt in May 2020 and included even more information to establish that she was the victim of identity theft.

51. Plaintiff's May 5, 2020 credit reporting dispute included a four-page narrative explaining the extensive damages that Plaintiff had suffered as a result of the ongoing fraud.

52. Said dispute also included Plaintiff's FTC Fraud Affidavit; Plaintiff's Police Report; C&W's Initial Collection Letter; pictures of Plaintiff's car accident; and, confirmation that the C&W tradeline was deleted from Plaintiff's Experian Credit Report in response to her March 2020 dispute.

53. As before, C&W was also required to conduct a reasonable reinvestigation into their credit reporting on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

54. Equifax was again required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

55. Plaintiff was again elated when Plaintiff received confirmation from Trans Union dated May 21, 2020 that the C&W tradeline was deleted from her credit report in response to her May 2020 dispute.

56. This euphoria was short lived; however, since Plaintiff subsequently learned Equifax rejected Plaintiff's second dispute of this inaccurate tradeline.

57. Similarly, C&W through its employee or agent, Star Cruz, also rejected Plaintiff's dispute on May 22, 2020.

58. This reporting of the fraudulent debt remains on Plaintiff's credit report as of the date of this filing.

59. In addition, Equifax was required to block the tradelines within four business days from receipt of Plaintiff's identity theft dispute, pursuant to 15 U.S.C. §1681c-2(a).

60. However, not only did Equifax fail to block the tradelines within four business days from receipt of Plaintiff's identity theft dispute, Equifax has allowed the accounts to continue reporting as of the date of the filing of this complaint.

61. C&W submits inaccurate credit information regarding Plaintiff to the Credit Bureaus every thirty days.

62. Equifax did not provide notice to Plaintiff that Plaintiff's dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

63. Defendants' investigations, if any, were unreasonable.

64. More specifically, C&W should have discovered from C&W's own records, including Plaintiff's formal disputes, that the information being reported was inaccurate and materially misleading.

65. Plaintiff contends that it was unreasonable for Defendants to not contact the Oceanside Police Department; to not contact the Texas Sherriff, to not contact Plaintiff for further information if needed; to not investigate Plaintiff's whereabouts on the date of the fraudulent transactions; to not investigate whether the Fraudster was in jail; to not consider the Experian or Trans Union acceptances of Plaintiff's disputes; and, to not investigate whether Plaintiff was even old enough to rent a vehicle in 2016.

66. Accordingly, C&W failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

67. C&W failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

68. Due to C&W's failure to reasonably investigate, C&W further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

69. By inaccurately reporting account information after notice and confirmation of its errors, C&W failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

70. Through this conduct, C&W violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that C&W knew or should know was inaccurate.

71. Through this conduct, Defendant violated Cal Civ. Code § 1798.93.

72. Equifax also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

73. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's dispute Equifax were fruitless.

74. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was willful.

75. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendants' knowledge of the actual error was reckless.

76. Defendants' failure to correct the previously disclosed inaccuracies on Plaintiff's credit reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

77. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

78. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

79. Defendants' conduct has caused Plaintiff emotional distress.

80. Plaintiff has spent countless hours disputing this inaccurate information with Defendants in an attempt to provide any and all information needed for the investigations.

81. While Plaintiff was thorough in Plaintiff's disputes at all times, each Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

82. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large charge-off mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

83. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of credit denials. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

84. In addition, Plaintiff was repeatedly denied financing as a result of the poor credit caused by Defendants.

85. Said car loan denials include, but are not limited to, A L Financial; Capital One; Consumer Portfolio Services; Credco; Flagship Credit Acceptance LLC; Global Lending Services; Santander; and, Westlake.

86. Plaintiff was also rejected from various apartment complexes due to her inappropriately deflated credit.

87. These rejections caused Plaintiff to be homeless.

88. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.
89. Similarly, Equifax also received documents in connection with Plaintiff's dispute that directly contradicted the inaccurate credit reporting.
90. These documents should have caused Equifax to remove the inaccurate information from Plaintiff's credit report.
91. By intentionally reporting continuing obligations, Defendants acted in conscious disregard for Plaintiff's rights.
92. To report an ongoing obligation despite the fraudulent nature of these accounts shows that Defendants took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.
93. Since these efforts were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF
## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681-1681X (FCRA)
## [AGAINST ALL DEFENDANTS]

94. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.
95. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.
96. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

97. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 and such amount as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT II
## VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.
## [AGAINST C&W]

98. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

100. In the regular course of its business operations, C&W routinely furnishes information to credit reporting agencies pertaining to transactions between C&W and C&W's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

101. Because C&W is a partnership, corporation, association, or other entity, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), C&W is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

102. Since C&W received all documents required to determine the inaccuracy of C&W's reporting, C&W should have known to update said reporting.

103. C&W also should have determined that C&W's reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## COUNT III

## VIOLATIONS OF CALIFORNIA'S IDENTITY THEFT ACT

## CAL. CIV. CODE § 1798.92-1798.97

## [AGAINST C&W]

104. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

105. The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.92, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.92.

106. As a result of each and every violation of Cal. Civ. Code § 1798.92, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each Defendant for:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful

noncompliance to the FCRA;

- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;
- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against C&W;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against C&W;
- General damages according to proof;
- Special damages according to proof;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against C&W;
- Punitive damages according to proof as to the FCRA; and, CCCRAA claims;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty of $30,000 pursuant to Cal. Civ. Code § 1798.93(c)(6);

LOKER LAW, APC
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420

- A declaration regarding Plaintiff's lack of liability to the claimants pursuant Cal. Civ. Code §§ 1798.93(c)(1)-(2);
- An injunction regarding claimants pursuant Cal. Civ. Code § 1798.93(c)(3); and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

107. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 23, 2021                                             Respectfully submitted,

**LOKER LAW, APC**

By:   /s/ Matthew M. Loker
      MATTHEW M. LOKER, ESQ.
      ATTORNEY FOR PLAINTIFF