UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL HORTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CAINE & WEINER COMPANY, INC. AND EQUIFAX INFORMATION SERVICES LLC,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:21-cv-1160-W (AHG)<br><br>**ORDER DENYING DEFENDANT CAINE & WEINER COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT [DOC. 46]** |

Pending before the Court is Defendant Caine & Weiner Company, Inc.'s ("C&W") Motion for Summary Judgment as to all of Plaintiff Rachel Horton's claims. (*Mot.* [Doc. 46].) In the alternative, Defendant moves for partial summary judgment as to Plaintiff's California Identity Theft Act ("ITA") claim and Plaintiff's California Consumer Credit Reporting Act ("CCRAA") claim on grounds that they are barred by the statute of limitations. (*Id.*) Plaintiff Horton opposes both requests. (*Opp'n* [Doc. 44]; *Supp. Opp'n* [Doc. 58].) Defendant also moves for judicial notice as to two previous court filings

from another matter. [Doc. 46-3]. And both Parties move to file their summary judgment briefings under seal. [Docs. 56 and 59].

The Court decides the matters on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendant's motion for summary judgment in full, **GRANTS** Defendant's request for judicial notice, and **GRANTS IN PART AND DENIES IN PART** both Parties' requests to file their briefings under seal.

I.   BACKGROUND

Plaintiff Rachel Horton was the victim of identity theft in February 2016. (*Compl.* [Doc. 1] ¶¶ 25-26.) The fraudster broke into her vehicle, stole her wallet, driver's license, and social security card, and used that information to open several unauthorized accounts. (*Id.* ¶¶ 26, 29-30.) One of these accounts was used to rent a vehicle from Fox Rent a Car, Inc. ("Fox"). (*Id.* ¶¶ 30, 38.) The fraudster damaged the car and caused it to be impounded. (*Id.* ¶¶ 30-39.) Plaintiff filed a police report, and the perpetrator was eventually caught and convicted. (*Id.* ¶¶ 35-36.) During this time, Fox commenced collection actions against Plaintiff. (*Id.* ¶¶ 38-39; *Supp. Opp'n* at 2.)

Fox sent one portion of the debt for collection to National Commercial Services ("NCS"), a third-party collection agency. (*Supp. Opp'n* at 2.) After learning that NCS reported a $7,404 debt to her credit report, Horton submitted two disputes to the credit bureaus with substantiating documentation. (*Id.*) Horton then filed suit against NCS regarding this debt collection in May 2020 ("Horton I"). (*Id.*) Horton and NCS officially resolved this dispute in July 2021. (*Id.* at 3.) While Fox was not a party to this lawsuit, NCS requested that Fox participate and contribute to the settlement to release Fox from any future liability. (*Id.*)

Meanwhile, Fox sent a second portion of the debt to Defendant C&W for collection. (*Compl.* ¶ 39; *Supp. Opp'n* at 3.) This collection concerned the same rental contract and car from Fox. (*Mot.* at 8.) Defendant C&W then reported a $2,083 debt to

Plaintiff Horton's credit report, prompting Horton to dispute this debt to the relevant credit reporting agencies. (*Supp. Opp'n* at 3.) Plaintiff then filed the current suit against Defendant C&W for failing to conduct a reasonable investigation regarding her "fraudulent" debt ("Horton II"). (*Id.*) Plaintiff brought this suit ten days after filing a notice of settlement with NCS and Fox in Horton I. (*Mot.* at 8.)

Plaintiff alleges three claims in this current action against Defendant C&W: (1) violation of the Fair Credit Reporting Act ("FCRA"); (2) violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"); and (3) violation of California's Identity Theft Act ("ITA"). (*Compl.* ¶¶ 94-106.)

Now Defendant C&W moves for summary judgment as to all three claims on grounds that the settlement agreement from Horton's first lawsuit against NCS (Horton I) released these new claims against C&W. (*Mot.* at 8.) In the alternative, Defendant moves for partial summary judgment as to the second and third claims on grounds that they are time-barred. (*Id.* at 5.) Plaintiff opposes both requests.

## II. JUDICIAL NOTICE

Defendant C&W requests judicial notice of two documents: the complaint from Horton I (Ex. F), and the notice of settlement from Horton I (Ex. I) [Doc. 46-3]. Plaintiff does not oppose this request. "[A] court may take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents." Peel v. BrooksAmerica Mortg. Corp., 788 F.Supp.2d 1149, 1158 (C.D. Cal. 2011) (citations omitted). Accordingly, the Court takes judicial notice of the existence of these filings.

## III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the

outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The essential inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A motion for summary judgment is designed to "prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2712 (4th ed. 2022).

  A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted).

  If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." In re Citric Acid Litig., 191 F.3d 1090, 1094 (9th Cir. 1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate '*specific facts* showing that there is a genuine issue for trial.'" Ford Motor Credit Co. v. Daugherty, 270 Fed. App'x. 500, 501 (9th Cir. 2008) (citing Celotex, 477 U.S. at 324) (emphasis added).

  At this stage, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." Scott v.

1  Harris, 550 U.S. 372, 378 (2007) (quoting U.S. v. Diebold, Inc., 369 U.S. 654, 655
2  (1962) (per curium)).  Although the moving party "bears the initial responsibility" of
3  "demonstrat[ing] the absence of a genuine dispute of material fact," the plain language of
4  Rule 56 "mandates the entry of summary judgment [. . .] against a party who fails to
5  make a showing sufficient to establish the existence of an element essential to that party's
6  case, and on which that party will bear the burden of proof at trial."  Celotex Corp. at
7  322-23.

**IV.    DISCUSSION**

   **A.    The Settlement Agreement from Horton I Does Not Cover Plaintiff's Claims Against C&W as a Matter of Law**

Defendant C&W moves for summary judgment on all three claims on grounds that the settlement agreement from Horton I releases Plaintiff's claims against C&W in this lawsuit (Horton II). (*Mot.* at 8.)  Horton I, which involved Plaintiff Horton and NCS, concerned NCS' collection efforts and credit reporting regarding Plaintiff Horton's car rental agreement with Fox. (*Id.*)  The parties eventually entered into a settlement agreement in July 2021. (*Id.*)  According to that agreement, the settling parties in that case were Plaintiff Horton, Defendant NCS, and nonparty Fox, as well as their assignees, agents, affiliated companies, etc., "whether or not named as a party to this case." (*Id.*)  The agreement specified that while Fox is not a party to that suit, Fox is contributing settlement sums to obtain a release of liability from all current, future, or contemplated claims. (*Id.*)  Defendant C&W, however, did not participate in the Horton I settlement, did not provide any consideration in furtherance of the resolution, and was not identified explicitly as a Settling Party in the agreement. (*Id.*; *Matthew Loker Supp. Decl.* [Doc. 58-1; 58-2] Ex. 12 at 32-33, 36.)

In any event, C&W argues that the Horton I settlement agreement covers Plaintiff's claims against C&W in this action because C&W is an agent and assign of Fox, it was referenced in the NCS Complaint in Horton I, and it was involved in the

events described therein. (*Id.* at 9.) The issue, therefore, is whether Defendant C&W is an agent or assign of Fox as a matter of law.

An agency relationship "requires more than [a] mere authorization to assert a particular interest." Hollingsworth v. Perry, 570 U.S. 693, 713 (2013). Rather, agency requires that another (1) acts on the principal's behalf, and (2) is subject to the principal's control. Harby v. Saadeh, 816 F.2d 436, 439 (9th Cir. 1987). Control is a crucial element of agency. Id. Absent any evidence of the principal's authority to direct, restrain, and control the actions of the other, no agency relation may exist. Nelson v. Serwold, 687 F.2d 278, 282 (9th Cir. 1982). Moreover, while the characterization given by the parties is a factor to be considered as to whether an agency relationship exists, the characterization is not controlling. Id. Agency exists only if the party agrees to hold title for the benefit and subject to the control of another. Id.

Legal assignment requires that the assignee receive all right, title, and interest to the property. In re Martin, 167 B.R. 609, 615 (Bankr. D. Or. 1994). "It is the substance and not the form of the transaction which determines whether an assignment was intended . . . . If from the entire transaction and the conduct of the parties is clearly appears that the intent of the parties was to pass title to the [property], then an assignment will be held to have taken place." Recorded Picture Co. v. Nelson Entm't, Inc., 53 Cal.App.4th 350, 368 (1997) (internal quotations omitted; citation omitted). There is no legal assignment if the contract does nothing to extinguish the rights to receive payments directly from the debtor. Cal. Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd., 203 Cal.App.4th 1328, 1337 (2012). Representations showing that the actor is pursuing recovery of a debt on behalf of another indicates a lack of actual assignment. Id.

Defendant C&W contends that it is an agent or assignee of Fox. (*Mot.* at 14.) Defendant's evidence of this contention comes from the Declaration of Mary Lockhart, an attorney and Director of Compliance for Fox. (*Lockhart Decl.* [Doc. 46-1] ¶ 3.) Lockhart avers that C&W was retained by Fox in October 2016 to assist with collection efforts regarding Plaintiff's rental agreement and "was assigned the portion of the

account reflecting the rental charges, fuel charge, impound fees, etc. due from Ms. Horton." (*Id.*)  Mark Milstein, Chief Operating Officer of C&W, attests to this same point in his Declaration in support of Defendant's Motion.  (*Milstein Decl.* [Doc. 46-2] ¶ 2.)  Defendant C&W also argues that it is an agent of Fox because C&W is a "collection AGENCY and [is] referenced as the Agency throughout the agreement between Fox and C&W. . . ." (*Reply* [Doc. 62] at 4-5.)  And, according to Defendant, Ms. Lockhart testified in her deposition that Fox considers C&W to be their agent.  (*Id.* at 5.)

However, as noted above, the characterization given by the parties is only a factor to be considered as to whether an agency relationship exists; the characterization is not controlling.  Nelson, 687 F.2d at 282.  Agency requires that (1) C&W act on Fox's behalf and (2) be subject to Fox's control.  See Harby, 816 F.2d at 439.  While it is apparent that C&W acted on Fox's behalf, nothing in the evidence provided by Defendant establishes that C&W was subject to Fox's control as a matter of law.  Crucially missing from Defendant's Motion is the collection services agreement itself between Fox and C&W.[1] Therefore, judging from the evidence provided by Defendant, the Court cannot say that an agency relationship exists as a matter of law between Fox and C&W.  See Harby, 816 F.2d at 439 (finding no agency relationship because the plaintiff failed to submit the agency agreement or any other evidence supporting a finding of agency).

Defendant has not sufficiently established that it is an assignee of Fox either. According to the Milstein and Lockhart Declarations, C&W was retained by Fox in October 2016 to assist with collection efforts regarding Plaintiff's car rental agreement.

---

[1] It is actually Plaintiff Horton who provided the collection services agreement between C&W and Fox in her Opposition to Defendant's Motion for Summary Judgment.  (*Supp. Decl. of Matthew Loker* [Doc. 58-1] ¶ 8, Ex. 13.)  Under Federal Rule of Civil Procedure 56(c)(1)(A): "A party asserting that a fact cannot be … genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  And under Rule 56(c)(3): "The Court need consider only the cited materials, but it may consider other materials in the record."

(*Milstein Decl.* ¶ 2; *Lockhart Decl.* ¶ 3.) But as noted above, representations showing that the actor is pursuing recovery of a debt on behalf of another indicates a lack of actual assignment. Cal. Ins. Guarantee Assn, 203 Cal.App.4th at 1337.

The Declarations also state that C&W "was assigned the portion of the account reflecting the rental charges, fuel charge, impound fees, etc. due from Ms. Horton." (*Milstein Decl.* ¶ 2; *Lockhart Decl.* ¶ 3.) First, use of the word "assign" is not conclusive. Cal. Ins. Guarantee Assn, 203 Cal.App.4th at 1336. Second, there is no legal assignment if the contract does nothing to extinguish the rights to receive payments directly from the debtor. Id. at 1337. The evidence provided by Defendant does not indisputably establish that Fox extinguished its rights to receive payments directly from the debtor. Accordingly, Defendant has failed to carry its initial burden of establishing the absence of a genuine issue of material fact.

Furthermore, even if the Court considers the collection services agreement between Fox and C&W, there is still a genuine dispute as to whether C&W is Fox's agent or assignee. At this stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott, 550 U.S. at 378. With that principle in mind, the Court finds that the agreement does not: sufficiently spell out the scope of Fox and C&W's agency relationship; establish that Fox had authority to direct, restrain, or control C&W's conduct; establish that it extinguished the rights of Fox to receive payments directly from the debtor; or show that C&W received all right, title, and interest to the property. Indeed, as to this final point, under section 2(i) of the collection services agreement, C&W must obtain Fox's written approval before settling the assigned claim. (*Supp. Loker Decl.* [Doc. 58-1] ¶ 8, Ex. 13.) Therefore, it cannot be said that C&W received all right, title, and interest to the property as a matter of law if it still needed Fox's approval to settle the claim.

In addition, Defendant argues that if Plaintiff wanted to exclude C&W from the Horton I settlement agreement, she was under a duty to expressly state the exclusion in the agreement. (*Mot.* at 14-15.) Defendant cites to two cases in support of this

proposition: Edwards v. Comstock Ins. Co., 205 Cal.App.3d 1164, 1166 (1988); and Jefferson v. Dep't of Youth Auth., 28 Cal. 4th 299, 301 (2002). But these cases are readily distinguishable from the present action because both concerned plaintiffs who entered a general release of all claims with the participating parties, and then later tried asserting claims against the same participating parties. Unlike in those cases, C&W was not a participating party to the Horton I settlement agreement. Therefore, Defendant has not shown that Plaintiff had a duty to expressly exclude C&W from the Horton I settlement agreement.

Accordingly, Defendant's Motion for Summary Judgment as to all three claims on the basis that the Horton I settlement agreement released C&W from liability is **DENIED**.

### B. Plaintiff's Claims are Not Time-Barred as a Matter of Law

Defendant argues that Plaintiff's ITA and CCRAA claims are time-barred. (*Mot.* at 15-18.) The statute of limitations for ITA claims are four years and two years for CCRAA claims. Cal. Civ. Code § 1798.96; Cal. Civ. Code § 1785.33. Defendant argues that because Plaintiff was aware of the Fox claim and C&W's collection efforts in October 2016, she was required to bring her ITA claim by October 2020[2], and her CCRAA claim by 2018. (*Mot.* at 15-18.) Plaintiff filed this lawsuit on June 23, 2021, so according to Defendant, these two claims are time-barred. (*Mot.* at 16.)

#### 1. ITA Claim

"As a general rule, a cause of action accrues and a statute of limitations begins to run when a controversy is ripe – that is, when all of the elements of a

---

[2] Actually, April 6, 2021, because California Judicial Council Emergency Rule 9(a) tolled statutes of limitations in civil cases from April 6, 2020, until October 1, 2020, 178 days. (*Mot.* at 15-16.)

cause of action have occurred and a suit may be maintained." Jerry Beeman and Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., Inc., 2007 WL 8433885, at *2 (C.D. Cal. Aug. 24, 2007) (citation omitted).

Civil penalties are available in ITA claims if the victim of identity theft proves all of the following by clear and convincing evidence: (1) that at least 30 days prior to filing an action pursuant to this section, the victim of identity theft provided written notice to the claimant at the address designated by the claimant for complaints related to credit reporting issues that a situation of identity theft might exist and explaining the basis for that belief; (2) that the claimant failed to diligently investigate the victim's notification of a possible identity theft; and, (3) that the claimant continued to pursue its legal claim against the victim after the claimant was presented with facts that were later held to entitle the victim to a judgment pursuant to this section.  Cal. Civ. Code § 1798.93(c)(6); Cutler ex rel. Jay v. Sallie Mae, Inc., 2015 WL 1909482, at *8 (C.D. Cal. Apr. 24, 2015).

Defendant argues that the statute of limitations for Plaintiff's ITA claim began to run in 2016 because that is when she knew that her identity was stolen and knew that C&W was attempting to collect a debt that arose from this theft. (*Mot.* at 15-16.) But knowledge that C&W was attempting to collect a debt does not trigger the statute of limitations for ITA claims. Rather, the statute of limitations begins to accrue when there is an adverse action taken against the victim of identity theft by the claimant after the claimant failed to conduct a reasonable investigation of the victim's dispute. See Cal. Civ. Code § 1798.93(c)(6).  Thus, Defendant has failed to meet its burden in showing that Plaintiff's ITA claim is time-barred.  Accordingly, Defendant's Motion for Summary Judgment as to the ITA claim is **DENIED**.

### 2. CCRAA Claim

"To prevail on a [CCRAA] claim, the plaintiff must prove that (1) Defendant is a 'person' under the [CCRAA], (2) Defendant reported information to a [Credit

Reporting Agency]; (3) the information reported was inaccurate; (4) Plaintiff was harmed; and, (5) Defendant knew or should have known that the information was inaccurate." Sanchez v. U.S. Bank Nat'l Assoc., 2019 WL 4540121, at *5 (C.D. Cal. June 27, 2019) (internal quotations and citation omitted).

Like the ITA claim, Defendant argues that the statute of limitations began to run in 2016 when Plaintiff knew she was a victim of identity theft and knew about C&W's collection efforts. (*Mot.* at 16-18.) But the statute of limitations does not accrue when the defendant reports inaccurate information to a credit reporting agency. Plaintiffs must prove that the defendant knew or should have known that the information was inaccurate. Plaintiff Horton alleges that she did not know of C&W's reporting inaccuracy until she submitted her disputes to the credit bureaus. (*Horton Decl.* [Doc. 37-13] ¶¶ 15-18.) According to Horton, C&W verified its reporting in May 2020, and thus it was this verification and subsequent reporting that gave rise to Horton's CCRAA claim. (*Id.*; *Supp. Opp'n* at 24.) Therefore, there is a genuine dispute of material fact as to when the statute of limitations accrued as to Plaintiff's CCRAA claim. Accordingly, Defendant's Motion for Summary Judgment as to the CCRAA claim is also **DENIED**.

### V.     MOTIONS TO SEAL

Plaintiff Horton moves to seal her Supplemental Opposition and redact references to the collection services agreement between Fox and C&W. [Doc. 56]. Likewise, Defendant moves to seal its Reply brief and redact references to the collection services agreement and the settlement agreement from Horton I. [Doc. 59]. The Parties argue that references to the collection services agreement should be redacted because the parties in Horton I designated that document as "confidential" in that action. [Doc. 56 at 3].

A motion to seal documents that are part of the judicial record on a dispositive motion is governed by a "compelling reasons" standard. Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010). The strong

presumption of the right of public access may only be overcome on the basis of "articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture." Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.1995) (internal citations omitted).

As the Court already found, the Parties may redact references to the settlement agreement from Horton I. [See Doc. 43]. However, the Parties failed to articulate specific reasons why references to the collection services agreement should be redacted other than the fact the parties in Horton I deemed it confidential. This is not enough to meet the "compelling reasons" standard. See, e.g., Munoz v. PHH Corp., 2016 WL 10646326 at *2 (E.D. Cal. Sept. 16, 2016). Moreover, the Court does not believe the agreement contains confidential proprietary information that would cause competitive harm to Defendant C&W or nonparty Fox if disclosed. See, e.g., In re Elec. Arts, 298 F. App'x 568, 569 (9th Cir. 2008) (stating that compelling reasons may exist if sealing is required to prevent documents from being used "as sources of business information that might harm a litigant's competitive standing"). Therefore, the Parties' motions to file documents under seal [Docs. 56 and 59] are **GRANTED IN PART AND DENIED IN PART**.

Plaintiff may file an unredacted version of her Supplemental Opposition under seal, but for the public version, may only redact references to the settlement agreement, not the collection services agreement. Likewise, Defendant may file an unredacted version of its Reply under seal, but for the public version, may only redact references to the settlement agreement, not the collection services agreement.

### VI. ORDER & CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant C&W's Motion for Summary Judgment in full [Doc. 46], **GRANTS** Defendant's request for judicial notice

[Doc. 46-3], and **GRANTS IN PART AND DENIES IN PART** both Parties' motions to file documents under seal [Docs. 56 and 59].

  **IT IS SO ORDERED.**

Dated:  August 15, 2022

                _____
                Hon. Thomas J. Whelan
                United States District Judge